# EXHIBIT A

# FLSA SETTLEMENT AGREEMENT AND RELEASE

This FLSA Settlement Agreement and Release ("Agreement") is made and entered into by and between Plaintiff Takisha Coley ("Plaintiff") and Defendants PruittHealth, Inc., PruittHealth – Franklin, LLC, and PruittHealth – Austell, LLC (collectively, "Defendants"). Plaintiff and Defendants are collectively referred to herein as "the Parties" or individually as a "Party."

Plaintiff, represented by Brown, LLC ("Plaintiff's Counsel"), and Defendants, represented by Kabat Chapman & Ozmer LLP ("Defendants' Counsel"), desire to compromise and settle their dispute arising from Plaintiff's Fair Labor Standards Act ("FLSA") claim (the "FLSA Claim") in *Takisha Coley v. PruittHealth, Inc., et al.*, No. 1:21-cv-05198-ELR (N.D. Ga. Dec. 23, 2021) ("the Litigation"). Without admission of fault and for the sole purpose of resolving and compromising the FLSA Claim, the Parties enter into this Agreement as settlement of the FLSA Claim, including attorneys' fees, and any other elements of damage, past, present and future, which were brought, or which could have been brought in the Litigation. Subject to the approval of the Court, the Parties agree as follows:

1. **No Admissions.** Defendant denies any violation of the FLSA and any other federal, state, or local law, ordinance, or regulation, including those related to overtime, minimum wages, regular wages, or other compensation. This Agreement shall not be construed as an admission by any Party or Released Party (as defined in paragraph 7) of any liability, or any acts of wrongdoing, or the violation of any federal, state, or local law, ordinance, or regulation, nor shall it be considered as evidence of any such alleged liability, wrongdoing, or violation of any federal, state, or local law, ordinance, or regulation. The Parties agree that this Agreement shall not be admissible as evidence in any trial, hearing, deposition, or other action before any court or tribunal of any kind, except that it may be used as evidence in a subsequent proceeding to enforce the terms of this Agreement.

2. **Financial Terms of Settlement.** In consideration for Plaintiff's execution of this Agreement, dismissal of the FLSA Claim with prejudice, and the releases and other consideration set forth in this Agreement, Defendant will pay the total amount of Twenty Two Thousand Five Hundred Dollars and Zero Cents ($22,500.00) (the "Settlement Amount"), on behalf of and for the benefit of itself and the Released Parties pursuant to the terms and conditions of this Agreement. The Settlement Amount is inclusive of all payments to Plaintiff and Plaintiff's Counsel and includes all amounts to which Plaintiff or Plaintiff's Counsel may claim entitlement for damages, costs, attorneys' fees, or other expenses of litigation related to the Released Claims (as defined in paragraph 7). Payments from the Settlement Amount shall be allocated as follows:

    a. A total of Ten Thousand One Hundred and Seventy Dollars and Thirty-Five Cents ($10,170.35) shall be paid from the Settlement Amount to Plaintiff's Counsel. This is the total amount of attorneys' fees, litigation costs, and expenses Plaintiff's Counsel shall receive to compensate them for their representation of Plaintiff as to the Released Claims, including their filing of the Litigation, Litigation expenses, this Settlement, and post-settlement activities and compliance procedures. Plaintiff's Counsel's attorneys' fees and costs payment was separately negotiated. Defendant shall issue an IRS Form 1099 to Plaintiff and Plaintiff's Counsel for this

      payment following receipt of Plaintiff's IRS Form W-9 and Plaintiff's Counsel's IRS Form W-9.

   b. Plaintiff shall receive the following: (a) one check in the amount of Six Thousand One Hundred and Sixty-Four Dollars and Eighty-Three Cents ($6,164.83) attributable to wages from which Defendants shall make all mandatory deductions and withholdings from Plaintiff's portion of the Settlement Amount for Plaintiff's share of federal, state, and local payroll taxes on the wage payment and for which Defendants will issue an IRS W-2 form to Plaintiff for this portion of the Settlement Amount; and (b) one check in the amount of Six Thousand One Hundred and Sixty-Four Dollars and Eighty-Two Cents ($6,164.82) attributable to non-wages from which Defendants shall make no deductions and for which Defendants will issue an IRS 1099 form to Plaintiff after receipt of her IRS Form W-9 for this portion of the Settlement Amount, designating such payment under Box 3 as a non-wage payment. Plaintiff warrants, represents, and agrees that, based on the risk of not prevailing at trial, the portion of the Settlement Amount she is receiving is a fair and reasonable compromise of the total amount of unpaid wages Plaintiff is claiming in the Litigation.

3. **Defendants' Portion of Payroll Taxes.** Defendants will be responsible for their portion of any applicable payroll taxes due on the wage payment (Form W-2 payment) described in Paragraph 2(b), above.

4. **Timing of and Preconditions for Payments.** Defendant shall make the payments comprising the Settlement Amount described in Paragraph 2 of this Agreement within thirty (30) days of the later of (1) the Court's approval of this Agreement and dismissal of the Litigation with prejudice, (2) Defendants' receipt of this Agreement executed by Plaintiff, and (3) Defendants' receipt of fully completed IRS Forms W-9 from Plaintiff and Plaintiff's Counsel. Defendants shall not be required to make any payments under this Agreement until all the foregoing preconditions are met. Defendants' payments under this Agreement shall be deemed paid on the date of their mailing to Plaintiff's Counsel.

5. **Acknowledgement of Sufficiency of Settlement Payment.** Plaintiff and Plaintiff's Counsel acknowledge the receipt and sufficiency of the amounts to be paid to them pursuant to this Agreement and further acknowledge and agree that the amounts set forth herein fully and finally resolve, settle, and compromise Plaintiff's FLSA Claim and alleged damages and Plaintiff's Counsel's claims for attorneys' fees and costs in the Litigation arising from or related to the FLSA Claim.

6. **Tax Treatment**. Defendant makes no representation to Plaintiff or Plaintiff's Counsel as to the tax liability, if any, on any settlement payment described in this Agreement. Plaintiff and Plaintiff's Counsel agree that they shall be fully and solely responsible for any and all tax liabilities with respect to their respective settlement payments, other than Defendant's share of payroll taxes to be paid by Defendant in accordance with Paragraph 3, above. In the event that any federal, state, or local taxing authority seeks to collect from Defendant taxes or interest which would have been collectible from Plaintiff or Plaintiff's Counsel,

Doc ID: a65277b6e65f0888bcb24d80a20629a024f7c7e0

Plaintiff or Plaintiff's Counsel, as applicable, hereby agree to immediately reimburse Defendant for those taxes or interest.

7. **Release of Claims.** Plaintiff, on behalf of herself, her assigns, representatives, agents, heirs, and attorneys, hereby fully, finally, and irrevocably releases, discharges, and covenants not to sue Defendants, and, as applicable, all of its respective past, present, or future parents or other affiliated corporations, divisions, subsidiaries, partnerships, partners, officers, members, directors, shareholders, employees, agents, attorneys, predecessors, successors, heirs, benefit plans, and assigns (and the officers, members, directors, shareholders, employees, agents, attorneys, predecessors, successors, benefit plans, and assigns of all such parent or other affiliated corporations, divisions, partnerships and subsidiaries) (collectively, the "Released Parties"), jointly and severally, from and with respect to any and all claims, demands, actions, liabilities, obligations and causes of action, that were asserted in the Litigation under the FLSA, as well as any and all other claims, including those for unpaid, late-paid, underpaid, or withheld payment, compensation, minimum wages, regular wages, overtime pay, commissions, and all claims under the FLSA and all other federal, state, or local laws, ordinances, or regulations (if any) that could have been asserted in the Litigation, based on the facts alleged therein (the "Released Claims"). Plaintiff further agrees and understands that she hereby waives and gives up any right to become, and promises not to consent to become, a member or class or collective representative of any class or collective in a case in which the Released Claims are asserted against any of the Released Parties. If, without Plaintiff's prior knowledge and consent, Plaintiff is made a member or representative of a class in any such proceeding, she hereby agrees to opt out of the class upon notice at the first opportunity.

8. **Court Approval Required.** This Agreement is subject to Court approval and shall not become effective until the Court approves the settlement and dismisses the Litigation with prejudice. The Parties will submit this Agreement to the Court and request that it reopen the Litigation for the sole purpose of approving the settlement, approve the settlement, and dismiss the Litigation with prejudice. If the Court does not approve this Agreement, the Parties agree to work in good faith to arrive at terms acceptable to the Parties and the Court and materially consistent with the terms set forth herein, and which shall not require payments by Defendants in excess of the Settlement Amount or material changes to the definition of the Released Parties. If a mutually agreed settlement cannot be reached or is not approved, the case will proceed as if no settlement had been attempted.

9. **No Rehire or Contracting.** Plaintiff permanently, unequivocally, and unconditionally waives any and all rights she may now have, may have had in the past, or may have in the future to obtain and/or resume employment with Defendants and/or any PruittHealth branded affiliates, or to do business for or with these parties through a third party. Plaintiff agrees never to apply for employment with Defendants or the parties referenced in the preceding sentence. In the event that Plaintiff is ever mistakenly employed by Defendants or these parties, Plaintiff agrees to have her employment terminated with no resulting claim or cause of action against Defendants or any of the aforementioned entities and individuals, their parents, successors, affiliates, and/or subsidiaries. Plaintiff acknowledges and agrees

Doc ID: a65277b6e65f0888bcb24d80a20629a024f7c7e0

that she has no right to employment or re-employment with Defendants or the preceding entities, and Defendants and these entities may legally refuse to employ her.

10. **Non-Disparagement.**  Plaintiff agrees to conduct herself in a professional and positive manner in all dealings, communications, and contacts concerning Defendants, Plaintiff's employment with Defendants, and her separation from employment with Defendants. Plaintiff agrees that she has not and will not criticize, denigrate, disparage, or make any derogatory statements about Defendants.  In particular, Plaintiff agrees not to make any derogatory statements about Defendants, their business plans, policies, and practices, or about any of the Defendants' officers, employees, or former officers or employees, to customers, competitors, suppliers, employees, former employees, members of the public, members of the media, or any other person.  Plaintiff also agrees not to damage Defendants' property or harm Defendants in any way, including financially.  Defendants agree to notify the following individuals of the existence of this non-disparagement provision and instruct them that they are required to conduct themselves in a professional and positive manner in all dealings, communications, and contacts concerning Plaintiff, Plaintiff's employment with Defendants, and her separation from employment with Defendants, and that they shall not criticize, denigrate, disparage, or make any derogatory statements about Plaintiff: Algenus Spiers.

    This Paragraph applies not only to verbal communications but also to all written communications including, but not limited to, communications through social media/social networking sites such as Facebook, Twitter, Instagram, Snapchat, and the like.  Nothing in this Agreement shall prevent any individuals who are subject to the restrictions in this Paragraph from engaging in activity protected by the FLSA, giving truthful testimony or information to law enforcement entities, administrative agencies or courts or in any other legal proceedings as required by law or otherwise by court order, including, but not limited to, responding to a lawful subpoena, assisting in an investigation or proceeding brought by any governmental or regulatory body or official related to alleged violations of any law relating to fraud or any rule or regulation of the Securities and Exchange Commission. Additionally, nothing herein shall act to prohibit any individuals who are subject to the restrictions in this Paragraph from reporting potential unlawful activity to any state or federal government agency.

11. **Supplementary Documents.**  All Parties agree to cooperate fully and execute all supplementary documents and to take all other actions that may be necessary or appropriate to carry out the terms of this Agreement.  The Parties acknowledge that each of them has had the benefit of counsel of its choice and has been afforded an opportunity to review the Agreement with their chosen counsel.

12. **Entire Agreement.**  This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein.  This Agreement may not be amended or modified in any respect other than in a writing which specifically refers to this Agreement and which is signed by all of the Parties bound by such amendment or modification.  Any and all prior or contemporaneous agreements, understandings, promises, representations,

warranties, and covenants, whether written or oral, or whether expressed, implied, or apparent, are hereby deemed merged into and made a part of this Agreement.

13. **Governing Law.**  This Agreement and any settlement agreement shall be governed by the laws of the State of Georgia without regard to its choice of law rules.

14. **Counterparts Permitted.**  The Agreement may be executed in counterparts each of which, including any true and correct PDF, facsimile, or other duplicate of an original, shall be deemed originals and all such counterparts shall constitute one and the same agreement.

15. **Capacity.**  The Parties warrant and represent that they have not sold, assigned, granted, conveyed, or transferred to any other entity or person any of the rights, obligations, claims, demands, actions, or causes of actions described herein.  The Parties have full legal and mental capacity to enter into, execute, and perform the terms and conditions contained in this Agreement and have entered into the Agreement voluntarily.

16. **Binding on Successors.**  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their successors, assigns, legal representatives, heirs and legatees.

17. **Severability; Rescission Right.**  If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws, such provisions shall be duly severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the severance of the illegal, invalid, or unenforceable provision or provisions.  However, the Parties agree that if any portion of the release of claims is determined to be illegal, invalid, or unenforceable, prior to the payment of consideration in paragraph 2 above, then this Agreement shall be rescindable at the option of the Defendant, upon written notice to Plaintiff's Counsel within five business days of the determination of illegality, invalidity or unenforceability. If the Defendant rescinds the Agreement, the Agreement will be null and void and Plaintiff and Plaintiff's Counsel agree to repay to Defendant all consideration paid and the Litigation shall return to the United States District Court for the Northern District of Georgia.

18. **Headings.**  The headings used in this Agreement are for convenience only and are not a part of this Agreement nor affect the interpretation of any of its provisions.

19. **Construction.**  This Agreement has been jointly negotiated and drafted by the Parties through their respective counsel and no provision shall be construed or interpreted for or against any of the Parties on the basis that such provision, or any other provisions or the Agreement as a whole, was purportedly drafted by a particular Party.

**[signatures appear on the next page]**

**PLAINTIFF AFFIRMS THAT SHE HAS CONSULTED WITH HER COUNSEL PRIOR TO SIGNING THIS AGREEMENT, THAT PLAINTIFF HAS PERSONALLY READ THE AGREEMENT AND THAT PLAINTIFF IS ENTERING INTO THE AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.**

**PLAINTIFF TAKISHA COLEY**

*/s/ P. Coley*

Date: 10 / 14 / 2021

**PRUITTHEALTH, INC.**

By: Brandon Dhande (DocuSigned, 9229CF3114A74F9...)

Its: SVP Deputy Gen Counsel

Date: 10/13/2021

**PRUITTHEALTH – AUSTELL, LLC**

By: Brandon Dhande (DocuSigned, 9229CF3114A74F9...)

Its: SVP Deputy Gen Counsel

Date: 10/13/2021

**PRUITTHEALTH – FRANKLIN, LLC**

By: Brandon Dhande (DocuSigned, 9229CF3114A74F9...)

Its: SVP Deputy Gen Counsel

Date: 10/13/2021

6